## Case No. 6,823.

### HUCHBERGER et al. v. PROVIDENCE WASHINGTON INS. CO.

[1 Chi. Leg. News, 353.]

Circuit Court, N. D. Illinois. June 28, 1869.[1]

FIRE INSURANCE — DEFECTIVE PROOFS OF LOSS— WHEN SUIT MAY BE BROUGHT—FRAUDULENT PROOFS.

[1. Plaintiffs were unable to verify their proofs of loss by their books of account, as provided in the policy, because they supposed the books to be lost. They therefore furnished them without such verification, and afterwards, on demand of the company, furnished additional affidavits of their loss. The books were in fact in the possession of the insurance company. Held, that the company could not complain that the proofs were not verified from the books in the first instance, and therefore the right given by the policy to sue within 60 days after proofs of loss accrued 60 days after the first proofs were furnished, and was not postponed to 60 days from the date of furnishing the additional affidavits.]

---

[1] [Affirmed in 12 Wall. (79 U. S.) 164.]

[2. Knowingly claiming, in the proofs of loss, a much larger amount than the actual loss, with intent to defraud the insurer, will prevent a recovery of any sum whatever, although the loss may have been considerable in amount. But, if the loss was honestly overestimated, the actual loss proved may be recovered.]

[This was an action at law by Huchberger Bros. against the Providence Washington Insurance Company.]

DAVIS, Circuit Justice (charging jury). This case is brought on one of the several policies of insurance to the amount of $46,000 on the stock of goods owned by the plaintiffs, in the store No. 173 Lake street, which was destroyed by fire on the second day of March, 1867. There is no question that the fire occurred, but the defendant raises the objection that the suit, being instituted on the 16th day of May, was begun too soon, as the policy allows the insurance company sixty days in which to pay, after notice and proof of loss; and the defendant insists that this time of sixty days began to run from the 23d day of March, when the affidavits in evidence were made by the plaintiffs and delivered to Miller, the agent of the defendant. This is a mistaken view of the terms of the policy. The plaintiffs, as they were required, did furnish, on the 23d of March, to the agent of the defendant (having given immediate notice of the fire), a particular account of their loss, verified by their own oath, with the proper certificate of the notary. The insurance company, by the policy, had the right to require that their loss should be also verified by their books of account, or other proper vouchers; but as the books of account were in the possession of the defendant, and this, too, without the knowledge of the plaintiffs, they, the plaintiffs, could not comply with this portion of the policy, and the defendant cannot complain of the plaintiffs' inability to verify their loss by their books. The plaintiffs, supposing their books and vouchers were destroyed, on request of the insurance company made the additional affidavits of the 22d and 23d of March. These affidavits were voluntary statements, and are proper evidence to be considered by the jury in deciding the merits of the case; but the making of them was not a condition precedent to the plaintiff's right to recover. When the plaintiffs made the proof of loss, on the 13th of March, verified by their own oath, with the proper notarial certificate, and could not verify this loss by the books of account and vouchers, because not in their possession, then they had a right to sue after sixty days from the 13th of March, unless the company in the interval paid them.

The main defense presented to this action is this: That the plaintiffs furnished a false and fraudulent account of the quantity and value of the goods which were destroyed. If this defense is true, the plaintiffs cannot recover anything; and whether true or not, it is your province to decide. The solution of the question depends on the conviction produced on your minds by the testimony. The law applicable to the case is very simple, will give you no trouble, and suggests itself naturally to the common mind. The plaintiffs cannot recover if they intentionally endeavored to make out their loss larger that it was; although the jury may believe they did suffer a very considerable loss. In such a case, coming into the court with unclean hands, the law will not help them to get even the value of the property destroyed. But if the plaintiffs made out their loss from their best recollection, not having their books before them, and had no intention to deceive, they can recover their pro rata loss, although the jury may be satisfied their claim is larger than the evidence warrants. The law allows indulgence for the mistakes of men honestly committed, but it never relieves when there is a purpose to commit a fraud. Of course, if the jury are satisfied the plaintiffs lost what they said they did, they should find for them the full amount of the policy. The nature of this defense is such that the burden of proving it is on the defendant. There is no positive proof that it is true, but it is sought to establish it by a species of proof from which you are led to infer its truth. If there is enough of this kind of evidence, it is oftentimes as convincing as positive proof. But to consider this kind of evidence in the character of the case you are trying devolves a high degree of responsibility on the jury. If the plaintiffs have sustained an honest loss, there should be no hesitation to give them a verdict. On the contrary, if you are convinced from the evidence that the case is fictitious, there should be no less hesitation on your part to find for the defendant. But as this latter finding necessarily stamps the plaintiffs as dishonest men, you should not be swift to come to such a conclusion, though it is your duty to do it if the evidence convinces you of its correctness. The case itself requires the application of your best judgment and highest powers of discrimination. The credibility of witnesses is for the jury. The court cannot instruct you who to believe and who to disbelieve, and there is no rule of law on the subject to control the minds of the jury. Some witnesses impress the jury that they are impartial between the parties and are telling the truth, while others produce the contrary impression. To all the witnesses you should apply the test of your common sense. Did they appear before you as honest men, telling what they knew? Had they the means of knowledge? Did they show bias, or were they fair and impartial? Were they intelligent? Did they show the test of a cross-examination, one of the surest means of ascertaining the truth? Have they been successfully contradicted on any ma-

terial point? I do not consider it necessary to examine the evidence at length. It all bears on a single issue, and it is your duty to apply it, in order to determine that issue. I will state the issue again:

Did the plaintiffs, purposely, render a false account of the loss which they sustained by the fire? If, on a consideration of the whole evidence, you are satisfied that the plaintiffs intended to commit a fraud on the insurance companies in making the loss larger than it actually was, you will find for the defendant. If, on the contrary, the evidence satisfies you that the account which the plaintiffs rendered of their loss was true, you will find for the plaintiffs; or if the evidence satisfies you that this account of loss was not true, but was mistakenly rendered by the plaintiffs, and that they did not intend to perpetrate a fraud on the insurance companies, then you will find a verdict for the loss actually sustained. If you come to the last conclusion, that there is no intentional wrong on the part of the plaintiffs, but that their loss was less than they say it was, you will have no difficulty in reaching the right verdict, as all the risks were $46,000 and the risk of this defendant was $4,000.

[See note to Case No. 6,822.]